Davis, J.
In P. C. C. & St. L. Ry. Co. v. Volkert et al., 58 Ohio St., 362, this court held that an assignment to an attorney of an interest in an existing judgment, in consideration of legal services rendered in procuring the judgment and other services to be rendered in sustaining the judgment is not champertous, and that such in *188 terest is not enforceable in a suit at law at the instance of the assignee against the judgment debtor only, but that it may be enforced in equity. Assuming, therefore, for the purposes of this case, that an assignment before judgment rendered, and even before action brought, of an interest in “the subject-matter of said claim equal to said fees,” does not interfere with the right of the assignor to compromise with the tort-feasor, and conceding, also, for the purposes of this case, the claim of the defendant in error that the contract amounts to an equitable assignment of an interest in the proceeds of the compromise, still it must be apparent that the defendant in error mistook his remedy. This is an action at law against the tortfeasor alone and not a proceeding in equity. It is just such a suit as the court, in the case cited, declared could not be maintained. The action is against the plaintiff in error only and the gist of the petition is that the plaintiff in error agreed with the defendant in error to adjust the claim of his client through him; that it violated the agreement and that it thereby became indebted to him, allowing credit for three hundred dollars paid by Mattison, in the sum of seven hundred dollars, with interest, for which he prays judgment and other proper relief. It is a clear-cut action for a money judgment and was so regarded by all the parties; for when the cause came on for trial, the record says: “A jury was waived by all of the parties to this cause, and it was tried to the court.” If it were a suit in equity to reach the fund in the hands of Mattison, or to set aside the agreement of compromise for fraud, or to declare the plaintiff in error to be a trustee for the defend *189 ant in error, the petition necessarily would have been entirely different in form and substance, and Mattison would have been a necessary party. Therefore if the courts below were right in holding that the defendant in error had an equitable interest in the fund resulting from the compromise, they were wrong in holding that he could recover against the plaintiff in error alone in a suit at law. This is so not only on authority of the Railway Co. v. Volkert, supra, but for the added reason that the record does not disclose any degree of evidence that plaintiff in error ever agreed with defendant in error to adjust the claim with him only and to pay to him the amount which might be agreed upon in settlement, that allegation and the alleged violation of it being the backbone of his suit at law against the plaintiff in error only. The notice which was sent to the plaintiff in error by .the defendant in error does not tend to prove such an agreement. It merely apprised the plaintiff in error that the defendant in error claimed to have an assignment of “a portion of whatever may be paid.” It contained no assertion that whatever might be paid should be paid to him or that it might not be paid to his client, and there is no evidence that it was assented to in that sense, or any other sense. It was not a notice that the defendant in error claimed an interest in the amount which might be agreed upon by way of settlement, before it left the hands of the plaintiff in error; but it was a notice of a claim upon the fund created by payment, into the hands of Mattison, that is after it should become “paid.”
*190 Again, the notice did not truly state the nature of the interest which was assigned. It was not an assignment of “a portion of whatever may be paid in suit or settlement;” but was in fact an attempt to assign an interest “in the subject-matter of the claim” equal to the defendant in error’s fees. This would seem to be an assignment, to the defendant in error, of the very substance of the suit. Whether such an assignment is valid and enforceable against the tortfeasor, is at least doubtful. The reasons against the enforcement of such an assignment have been very clearly set forth by the Court of Errors and Appeals of New Jersey. After referring to the doctrine of equitable .assignments of a portion of a claim for damages for personal injury, which has already been prosecuted to judgment, the court, speaking through Magie, Chancellor, says: “But such a question is not presented in this case, and the argument suggested is wholly inapplicable to. the situation disclosed by this bill. No judgment was recovered upon any of these claims for damages. What occurred between the parties was this: The alleged tort-feasor, the defendant company, admitted its liability for the injuries for which damages were claimed, treated with the injured persons with respect to the amount of compensation to be paid for a release of the claims, and when that amount was agreed on between them paid the same to the injured persons and simultaneously received from them complete releases therefor.
“That a person h.aving a valid claim to recover damages for a personal injury may bargain with his attorney and agree to pay him for his serv *191 ices a share of the amount received or recovered, and that such agreement may be Enforced between them seems to admit of no question. But the contention on the part of complainants is that the' attorney holding such an agreement or assignment of a share of the damages received may, by giving notice thereof to the tort-feasor, impose on the latter an obligation to account to him for such share of the compensation for such injuries as may be agreed upon between him and the person he has injured. To give such effect to a notice of such assignment would obviously operate to practically prohibit any composition between a tortfeasor and the person he has wronged, when the composition consists of a cash payment to the latter for a release. It would introduce into the negotiation for settlement, on the basis of a present payment to the injured person, the claim of one who was not injured, and whose only interest in the claim is what Lord Tenterden, in dealing with actions prosecuted in forma pauperis, called the ‘spes spolii.’
“Nor will such assignment fall within the reason of the doctrine respecting equitable assignments of choses in action under the circumstances disclosed in this bill. Such assignments admittedly operate only where some fund or property comes into existence arising out of a previous possibility. Lie who holds such a fund may then be liable to account to the assignee thereof. Where a composition is made between the tortfeasor and the pers.on wronged, on the basis of a payment for a release, the fund does not come into existence until the payments and the release are simultaneously exchanged. Then the fund *192 thus created is in the hands of the releasor, and the assignee may follow it there; but it never existed in the hands of the releasee.” Weller v. Jersey City, Hoboken & Paterson St. Ry. Co., 66 N. J. Eq., 11, 18-19.
If this reasoning is entirely sound, it would seem to result inevitably that under such an agreement as this the assignee could not maintain an action against the tort-feasor, but must work out his remedy through the assignor; and so it was held in that case, which was upon a demurrer to a bill in equity against the tort-feasor only.
There is no statute in this state which gives to an attorney a lien upon his client’s cause of action and provides a remedy for the enforcement of such lien; and therefore the opinions of courts in such states as have such- legislation are not generally of much value here, where an attorney’s lien before judgment has not been heretofore distinctly recognized.
But whatever were the original rights of the defendant in error, he abandoned the pursuit of the fund in the hands of Mattison, and in consideration of the deposit of three hundred dollars released Mattison and agreed to prosecute the plaintiff in error for the balance of his fees. His right to follow the fund in the hands of Mattison is unquestioned in any view of the case. This right he has not exhausted and has voluntarily surrendered, although the uncontradicted testimony of Mattison is that, for more than a year after the settlement with the plaintiff in error, he had more than two thousand dollars of the money on deposit in a bank in the same building in which the office of the defendant in error *193 is located. His right to recover from the plaintiff in error, if any, must be worked out in equity through his client and must depend on the existence of some legal liability to him, the violation of some duty which the law imposes; and this we do not find in the circumstances of this case.
We are, however, not at all impressed with the contention of the plaintiff in error that the liability, upon whomsoever it rested, was discharged by payment. Something more than seven hundred dollars, it is true, was temporarily in the hands of the defendant in error. It was not placed there for the purpose of payment, but wholly in compliance with his request to be allowed to count it. When the defendant in error after counting the money' said that he would keep it and apply it on account, the suggestion was resented and he returned it. He could not have kept it under the circumstances without being guilty of a crime.
For the reasons stated the judgments of both the courts below are reversed and judgment is entered for plaintiff in error.
Price, C. J., Shauck, Crew, Summers and Spear, JJ., concur.